IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK MILNER, *et al.*,

    Plaintiffs,

vs.                                      Civ. No. 17-254 KG/LF
                                           Consolidated with
                                           Civ. No. 17-255 KG/LF
                                           Civ. No. 17-256 KG/LF
                                           Civ. No. 17-257 KG/LF

VINCENT MARES, Executive Director,
New Mexico Racing Commission;
DAVID KEITER, Steward,
New Mexico Racing Commission,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants' Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(6) and filed on March 2, 2017. (Doc. 6). Plaintiffs[1] filed their Response in Opposition to Defendants' Motion to Dismiss on April 30, 2017. (Doc. 15). Defendants filed their Reply in Support of Motion to Dismiss on May 15, 2017. (Doc. 16). The Court held a hearing on the Motion to Dismiss on October 12, 2017, in which Dori E. Richards and A. Blair Dunn represented Plaintiffs, and Randi N. Valverde represented Defendants.

Having considered the parties' arguments and applicable law, the Court grants Defendants' Motion to Dismiss. Specifically, the Court determines that Defendants are entitled

---

[1] Each Plaintiff filed a separate complaint in state court. *See Milner v. Mares*, Civ. No. 17-254-KG/LF (Doc. 1-2); *Gerhardt v. Mares*, Civ. No. 17-255-KG/LF (Doc. 1-2); *Dale v. Mares*, Civ. No. 17-256-KG/LF (Doc. 1-2); *Bartoo v. Mares*, Civ. No. 17-257-KG/LF (Doc. 1-2). These complaints are similar with the exception of listing the respective Plaintiff's horse in paragraph 10. Because these complaints are essentially identical and the cases are consolidated, Plaintiff Milner's complaint will be used when citing to Plaintiffs' Complaint and the Court will refer to Plaintiffs collectively.

to qualified immunity on the Fourteenth Amendment Due Process Clause claims because Plaintiffs have failed to plead a clearly established constitutional right. Additionally, Defendants are entitled to qualified immunity because Plaintiffs have failed to plead facts sufficient to raise a plausible claim of relief under the Fourteenth Amendment's Due Process Clause or Equal Protection Clause. Accordingly, the Court dismisses Plaintiffs' Complaint without prejudice.

## I. Background

In their Complaint, Plaintiffs allege three constitutional violations against Defendants David Keiter and Vincent Mares under 42 U.S.C. § 1983. Specifically, Plaintiffs allege procedural due process, substantive due process, and equal protection violations. Complaint at ¶¶ 55-97. Plaintiffs support their claims with allegations of Defendants' conduct during the May 22-24, 2014, horse racing competition at the Ruidoso Downs Race Track, and with allegations regarding the post-scratch administrative appeal before the New Mexico Racing Commission (NMRC).

### A. *The May 22-24, 2014, Horse Racing Competition*

Plaintiffs are horse owners who were and are licensed by the NMRC to engage in horse racing in New Mexico. *Id.* at ¶ 9. Plaintiffs state that their horses were "scratched," or disqualified, during the third day of competition on May 24, 2014. *Id.* at ¶¶ 8, 10, 13, and 24. Defendant Keiter, the presiding Steward, scratched the horses for failure to comply with Rule 15.2.5.12(B) NMAC. *Id.* at ¶ 14 and 16. Rule 15.2.5.12(B) states,

> A horse shall be ineligible to start in a race when: its breed registration certificate is not on file with the racing secretary or horse identifier; unless the racing secretary has submitted the certificate to the appropriate breed registry for correction; the stewards may waive this requirement if the information contained on the registration certificate is otherwise available; and the horse is otherwise correctly identified to the stewards' satisfaction.

Defendant Keiter scratched the horses because Plaintiffs did not have the original breed certificates on file with the racing secretary at the competition in Ruidoso. *Id.* at ¶¶ 16 and 20. Defendant Keiter allegedly acted under the authority and direction of Defendant Mares, Executive Director of the NMRC. *Id.* at ¶ 15. Plaintiffs had copies of the breed certificates on file with the racing secretary at the competition in Ruidoso. *Id.* at ¶ 19. During the weekend of May 22-24, 2014, Plaintiffs had the original breed certificates on file in Farmington, New Mexico. *Id.* at ¶ 20.

Defendant Keiter's interpretation of Rule 15.2.5.12(B) had not been enforced in recent history. *Id.* at ¶ 22. According to Plaintiffs, Defendant Keiter and the NMRC were targeting horses trained by Mr. John Stinebaugh. *Id.* at ¶ 31. Plaintiffs allege that at least one horse, not owned by any Plaintiffs or trained by Mr. Stinebaugh and that did not have an original breed certificate on file at the Ruidoso Downs Race Track, was allowed to race during the competition at issue. *Id.* at ¶ 36. And no announcements or notices were given to owners that they needed to have the original breed certificates in Ruidoso. *Id.* at ¶¶ 34-35. Additionally, Plaintiffs allege that employees of the NMRC advised only some of the horse owners and trainers of the requirement to have an original certificate on file at Ruidoso during the race competition. *Id.* at ¶ 40.

### B. Plaintiffs' Administrative Appeal

On June 2, 2014, Plaintiffs filed an appeal of the scratches with the NMRC. *Id.* at ¶ 42. The NMRC appointed a hearing officer to hear the case and after a hearing on November 20, 2014, the hearing officer determined that Defendants' conduct "show[ed] a lack of impartiality and is inconsistent with the statutory directive of the Horse Racing Act." *Id.* at ¶¶ 42-45. The NMRC did not implement the recommendations of the hearing officer, did not take any actions

3

against Defendants, and did not compensate Plaintiffs. *Id.* at ¶ 46. Furthermore, on two separate occasions, March 12, 2015, and July 22, 2015, the NMRC did not adopt the hearing officer's recommendations. *Id.* at ¶¶ 47-48. Plaintiffs allege that the July 22, 2015, NMRC meeting took place in closed session in violation of NMAC 15.2.1.19(C)(15)(d). *Id.* at ¶¶ 49-50. For more than 16 months, the NMRC failed to reach a decision regarding Plaintiffs' appeal. *Id.* at ¶ 52. Plaintiffs finally withdrew their administrative appeal without final action by the NMRC. *Id.* at ¶ 54.

II.  *Standard of Review*

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiffs. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id.* at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To avoid a Rule 12(b)(6) dismissal based on the defense of qualified immunity, plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time."

4

*Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). A court "may decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

III.    *Discussion*

Defendants argue that they are entitled to qualified immunity on all of Plaintiffs' claims. First, Defendants assert that Plaintiffs have failed to show a clearly established right for their due process claims under the Fourteenth Amendment. Second, Defendants assert that Plaintiffs have failed to allege facts which plausibly show that Defendants are liable under Section 1983 for violations of Plaintiffs' Fourteenth Amendment rights to procedural due process, substantive due process, and equal protection.

    A.  *Due Process Claims*

        *1. Clearly Established Property Interest*

To decide whether Defendants are entitled to qualified immunity on Plaintiffs' due process claims, the Court must determine whether Plaintiffs have alleged sufficient facts to plausibly show that Defendants violated a clearly established property right or interest requiring due process protection. In this case, the Court finds it efficient to first consider the "clearly established" prong of the qualified immunity test.

The due process clause applies only when the government deprives a person "of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State College v. Roth*, 408 U.S. 564, 569 (1972). Plaintiffs allege that they were deprived of a property right to engage in the profession of horse racing. Complaint at ¶¶ 94 and 95; (Doc. 15) at 6-8. Plaintiffs are correct that a horse owner has a "property interest in his

5

license sufficient to invoke the protection of the Due Process Clause." *Barry v. Barchi*, 443 U.S. 55, 64, n.11 (1979); *see also Stinebaugh v. New Mexico Racing Comm'n*, 2015 WL 4874288, at *2 (N.M. Ct. App.) (discussing horse trainer's right to engage in chosen profession when license was suspended for seven days because of violation of NMRC's rules on drugs).

Here, Plaintiffs do not allege that their licenses themselves were affected in any way from the steward's decision to scratch the horses. Rather, they seemingly allege a right to a specific interpretation of Rule 15.2.5.12(B) that does not require the original breed certificate be on file at the race track on May 24, 2014, and that ultimately would have allowed them to race their horses that day. As explained further below, this Court finds that a reasonable interpretation of the Rule requires the original breed certificate be on file at the race track on the day of the race.

Even so, Plaintiffs then seemingly allege a right, based on a purported history of non-enforcement by the NMRC, to nevertheless race their horses on May 24, 2014, because they had no notice it would be enforced that day. Plaintiffs contend that Rule 15.2.5.12(B) had not been enforced previously to disqualify horses from racing for failure to have an original breed certificate on file with the racing secretary at the track holding the race. *Id.* at ¶¶ 29 and 37. But Plaintiffs have failed to produce any case law showing that a person has a recognized property interest in a specific interpretation or enforcement of an administrative agency's rule. Without a recognized property interest, reasonable officials, like Defendants, would not know that their interpretation or enforcement of Rule 15.2.5.12(B) and scratching of Plaintiffs' horses would violate Plaintiffs' constitutional right to due process, whether procedural or substantive. Therefore, Plaintiffs cannot show that there was a clearly established right to a particular interpretation or enforcement of Rule 15.2.5.12(B) on May 24, 2014.

Clearly, horse owners enjoy a property interest in their licenses, and that right was clearly established as of May 24, 2014. But it was not clearly established as of May 24, 2014, that the horse owners had a property interest in their interpretation of the Rule or to expect that the Rule would not be enforced as it was on May 24, 2014. As a result, Defendants are entitled to qualified immunity on the procedural and substantive due process claims.

*2. Plausible Procedural Due Process Claims*

The Court holds that Plaintiffs fail to plead a clearly established constitutional right to due process. Nevertheless, the Court considers whether Defendants enjoy qualified immunity by determining whether Plaintiffs have alleged facts sufficient to raise a plausible procedural due process violation. A two-step inquiry determines whether Plaintiffs plead a plausible procedural due process violation: "(1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (internal quotations omitted). Even assuming Plaintiffs have pleaded a protected property interest, Plaintiffs argue that there was no notice that they needed to have the original breed certificates on file at the Ruidoso Downs Race Track.

The Court determines that a reasonable interpretation of Rule 15.2.5.12(B) requires horse owners to have the original breeding certificate on file with the racing secretary. Indeed, it is reasonable to interpret the rule so as the stewards would expect to see the original certificate on file at the racetrack on the day of the race. Therefore, horse owners should expect that this rule applies to them. Rule 15.2.5.12(B) clearly requires a horse's breed registration certificate to be on file with the racing secretary, and if the certificate is not on file then the horse is ineligible to race. The Rule allows that "stewards *may* waive this requirement if the information contained on

7

the registration certificate is otherwise available [] and the horse is otherwise correctly identified to the stewards' satisfaction." *Id.* (emphasis added). But the Rule does not require stewards to allow a horse without a breed registration certificate on file with the racing secretary to nevertheless race. *Id.* Moreover, the Rule does not explicitly mention that *a copy* of a horse's breed registration certificate at a race makes a horse eligible to race. *See id.* As a result, one could reasonably conclude that the referenced certificate must be the original. Plaintiffs' argument that Rule 15.2.5.12(B) be interpreted to allow the original breed registration certificate to be filed somewhere off-site is unavailing.

Plaintiffs suggested at oral argument that the alleged injustice here is similar to a traffic stop for a violation of the posted speed limit where a police officer cites a driver for driving in excess of 55 miles per hour even though the posted speed limit is 65. The metaphor is inapplicable here. Rather, this Court likens Plaintiffs' arguments to that of a driver who is cited for speeding, claiming no violation occurred because no previous driver had ever been cited for violating the posted speed limit on that roadway. Clearly, that argument is unavailing. Every licensed driver is expected to know the traffic laws, including driving within the posted speed limit. The same principle applies here. Each licensed horse owner is expected to know the rules of the business, including Rule 15.2.5.12(B). The notion that this Rule purportedly has not been enforced serves no basis to violate it and certainly does not give rise to a protected right.

Moreover, Plaintiffs have failed to show that they were entitled to some other pre-scratch process. Contrary to Plaintiffs' argument regarding lack of pre-scratch process, the United States Supreme Court in *Barry* found that a horse trainer could be suspended without a pre-suspension hearing if the state provides a prompt post-suspension hearing without "appreciable delay." 443

8

U.S. 55, 64-66 (noting that trainer's interest in avoiding suspension is balanced by state's interest in maintaining integrity of horse racing).

In this case, Plaintiffs were availed of post-scratch process, specifically an administrative appeal before the NMRC. A hearing officer, appointed by the NMRC, heard Plaintiffs and proposed a report that was favorable to Plaintiffs. (Doc. 1-2) at ¶¶ 44-45. The New Mexico Racing Commission then had several chances to adopt, modify, or reject the hearing officer's report, but before it made a final decision, Plaintiffs withdrew their appeal. *Id.* at ¶¶ 46-48, 51-52, and 54. The NMRC provided Plaintiffs with an opportunity for process with the appeal, but Plaintiffs abandoned it. *Id.* at ¶ 54; *see also Wells v. Columbus Tech. Coll.*, 510 F. App'x 893, 897 (11th Cir. 2013) (stating "[s]o long as the state court has the power to remedy any procedural alleged deficiency, Mr. Wells was not deprived of due process."); *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."); *Amin v. Voigtsberger*, 560 F. App'x 780, 785–86 (10th Cir. 2014) (concluding that due process claim was properly dismissed where Colorado provided adequate post-deprivation remedy); *Hardman v. Johnson County Community College*, 2014 WL 1400668, at *5 (D. Kan.) ("In other words, the unavailability of adequate remedies is an element of a procedural due process claim—as opposed to an exhaustion requirement.").

Without determining whether the NMRC's delay amounts to "appreciable delay," the Court lacks personal jurisdiction over NMRC. The NMRC is not a party to this case. Moreover, Plaintiffs have failed to show that either Defendant Keiter or Mares is responsible for the delay. As a result, the Court cannot hold that Plaintiffs' plead plausible procedural due process claims for conduct that cannot be attributed to Defendants. Assuming that Plaintiffs have pleaded a

9

protected property interest, their procedural due process claims fail because they fail to show that they were entitled to pre- or post-scratch process from the Defendants and that the deprivation of it amounted to a constitutional violation of a clearly established right. Consequently, Defendants are entitled to qualified immunity on the procedural due process claims.

*3. Plausible Substantive Due Process Claims*

The Court now considers whether Defendants enjoy qualified immunity by determining whether Plaintiffs have alleged facts sufficient to raise a plausible substantive due process violation. A substantive due process claim can take one of two forms. One form may involve the violation of an individual's fundamental liberty interests, and the other form may arise from governmental conduct that shocks the conscience. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (citing *Chavez v. Martinez*, 538 U.S. 760, 787 (2003) (Stevens, J. concurring in part and dissenting in part)).

Under the first type of substantive due process, only those "fundamental rights and liberties which are 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty' qualify for such protection." *Chavez*, 538 U.S. at 775 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Regarding the second type of substantive due process, "only the most egregious official conduct" is prohibited. *Seegmiller*, 528 F.3d at 767. "Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard." *Koessel v. Sublette Cnty Sheriff's Dept.*, 717 F.3d 736, 750 (10th Cir. 2013). Plaintiffs argue that their Complaint contains allegations demonstrating both types of substantive due process claims. (Doc. 15) at 13-16.

This argument fails for two reasons. First, even if the Court views the Complaint as pleading the right to race in a single competition, Plaintiffs have failed to show that such a right

10

is of the sort of "fundamental rights and liberties which are 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty,'" which qualifies for such protection. *Chavez*, 538 U.S. at 775. In other words, Plaintiffs have failed to plead a fundamental right or liberty interest warranting substantive due process protection.

Second, although Plaintiffs plead elements of a shocks-the-conscience violation, merely pleading elements of a claim does not meet the Rule 12(b)(6) standard. Plaintiffs allege that Defendants "acted in an arbitrary manner to enforce a new policy without authorization and notice to racing participants and the public," and actions of Defendants amount to "an arbitrary exercise of government power." Complaint at ¶¶ 69 and 79. The Court considers these allegations as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which are insufficient to demonstrate a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. The Court notes the hearing officer's report, which states that the scratching "lacked impartiality and was inconsistent with the statutory direction of the Horse Racing Act to ensure that horse racing in New Mexico is conducted with fairness." Even so, Plaintiffs have failed to highlight the requisite egregiousness necessary for a plausible shocks-the-conscience claim. *See* (Doc. 1-2) at 21. Ultimately, viewed in the light most favorable to the non-movant, Plaintiffs' allegations fail to show the sort of egregious conduct that shocks the conscience. Consequently, Defendants are entitled to qualified immunity on the substantive due process claims.

### B. Equal Protection Claims

Similarly, the Court considers whether Defendants enjoy qualified immunity by determining whether Plaintiffs have alleged sufficient facts to plausibly show that Defendants violated a clearly established right to equal protection. The focus here is whether Plaintiffs plead

facts sufficient to raise a plausible equal protection violation. To state a plausible equal protection violation, a plaintiff must allege facts which show that he was treated differently than others "*who are in all relevant respects alike.*" *Taylor v. Roswell Ind. Sch. Dist.*, 713 F.3d 25, 53-54 (10th Cir. 2013). Moreover, "[e]qual protection jurisprudence has traditionally been concerned with governmental action that disproportionately burdens certain classes of citizens." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-16 (10th Cir. 2011)[2].

In this case, Plaintiffs do not allege membership in a protected class of citizens. Instead, they argue that "the newly interpreted regulations were not equally applied to all individuals situated as Plaintiff[s], but rather were applied to marginalize [their] rights and give an unfair advantage to other horse owners and trainers." (Doc. 15) at 17. Therefore, the Court views Plaintiffs' equal protection claims as "class-of-one" equal protection claims. *See Zia Shadows LLC v. City of Las Cruces*, 829 F.3d 1232, 1239-1240 (10th Cir. 2016) (considering plaintiff's equal protection claim as "class of one claim" because plaintiff failed to allege discrimination based on membership in protected class).

To succeed on a class-of-one theory, a plaintiff must show that "others, 'similarly situated in every material respect' were treated differently." *Kansas Penn Gaming, LLC*, 656 F.3d at 1216 (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty*, 440 F.3d 1202, 1210 (10th Cir. 2006)). Then, the plaintiff must show that "difference in treatment was without rational basis, that is, the government action was irrational and abusive, [] and wholly unrelated to any legitimate state activity." *Kansas Penn Gaming, LLC*, 656 F.3d at 1216 (internal quotation marks omitted).

---

[2] In discussing the equal protection claim, Defendants pull text *verbatim* from *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216-19 (10th Cir. 2011), without citing or quoting the case. *See* (Doc. 6) at 10-15.

Here, Plaintiffs allege that (1) the NMRC targeted horses trained by John Stinebaugh, (2) the scratches appeared to give a "competitive edge" to other horses, owners, and trainers, and (3) the NMRC allowed at least one horse not in compliance with Rule 15.2.5.12(B) to race. Complaint at ¶¶ 31, 33, and 36. And, Plaintiffs plead the NMRC selected certain owners and trainers to be affected negatively by Defendants Keiter and Mares' enforcement of Rule 15.2.5.12(B). *Id.* at ¶¶ 40 and 41. Finally, Plaintiffs plead Defendants Keiter and Mares "sought to deprive certain select individuals of their liberty and property interests" and "violate the rights of certain select individuals such as Plaintiff" by implementation of Rule 15.2.5.12(B), as Defendants did on May 24, 2014. *Id.* at ¶¶ 70 and 71.

However, these allegations fail to show that under a class-of-one theory, other owners similarly situated in every material respect to Plaintiffs were treated differently. In other words, Plaintiffs have failed to allege facts showing that other horses were allowed to race even though their original breed registration certificates were not on file with the racing secretary in Ruidoso. At most, Plaintiffs allege discrimination by Defendants regarding Mr. Stinebaugh, without making it clear who else was included or excluded in the scratching. Furthermore, at least one horse that was not in compliance with Rule 15.2.5.12(B) was allowed to race during the competition, but was retroactively disqualified after Plaintiffs' horses were scratched and as soon as it was determined that the horse had raced in violation of Rule 15.2.5.12(B). (Doc. 1-2) at 17. Therefore, that horse was not treated more favorably than Plaintiffs' horses.

Plaintiffs do not allege facts sufficient to state a plausible claim for relief under the Fourteenth Amendment's Equal Protection Clause. Consequently, Defendants are entitled to qualified immunity on the equal protection claims.

IV. *Conclusion*

For all of the above reasons, the Court grants the Motion to Dismiss on the basis of qualified immunity. The Court will dismiss the Complaint without prejudice.

IT IS ORDERED that

1. Defendants' Motion to Dismiss (Doc. 6) is granted; and

2. The Complaint will be dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE